## No. 12,613.

### Industrial Commission et al. *v.* Aetna Life Insurance Company et al.

(292 Pac. 229)

Decided September 29, 1930.   Rehearing denied October 20, 1930.

Mr. Robert E. Winbourn, Attorney General, Mr.

ARTHUR L. OLSON, Mr. WALTER E. SCHWED, for plaintiffs in error.

Messrs. SMITH, BROCK, AKOLT & CAMPBELL, for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THIS is a workmen's compensation case. For convenience we hereinafter refer to the Industrial Commission of Colorado as the commission; to one S. J. Smith as Smith; to the White Company by name; to its insurance carrier, the Aetna Life Insurance Company, as the Aetna Company; to Fred L. Mitchell as Mitchell; to his widow, Rose Mitchell, and his infant son, James Fred Mitchell, as claimants; to Platt-Rogers, Incorporated, as Platt-Rogers; and to its insurance carrier, the Standard Accident Insurance Company, as the Standard Company.

Smith bought a truck from the White Company. Having failed to pay for it the company attempted, by its operation, to work out of it the unpaid purchase price and in so doing Mitchell became the driver. Platt-Rogers, having a grading contract for the D. & R. G. Railroad Company, called upon the White Company for trucks. Among those obtained was the Smith truck driven by Mitchell. After some four months' work Mitchell was found dead (December 20, 1927) in the Arkansas river under his private car which he had been driving along an adjoining highway. Claimants thereupon brought this action before the commission against the White Company, the Aetna Company, Platt-Rogers, the Standard Company, and Smith. A referee denied all compensation. The commission, on review, entered an award against Platt-Rogers and the Standard Company. On rehearing it changed this to an award against the White Company and the Aetna Company. Thereupon the cause

was taken to the district court which found no evidence to sustain the award and entered judgment accordingly. To review that judgment the claimants and the commission prosecute this writ.

There is some conflict in the evidence, and it is now contended that the usual rule relating to the commission's findings based thereon is not here applicable because on this evidence the commission and its referee have found three different ways. We think the argument unsound. It might, with equal plausibility, under similar circumstances, be made against a jury's finding of fact because on a former trial another jury had disagreed or found otherwise. We know of no such exception. In such case the finding of fact in question is that upon which the judgment rests. In both the finding must stand.

Just what the district court found in the instant case, or failed to find, is not clear. Its judgment simply recites that "the evidence introduced in the proceedings before the Industrial Commission is insufficient upon which to base the judgment and findings." If that means that the court passed upon the weight of the evidence it exceeded its jurisdiction. If it means, as we now assume, that it found no legal evidence to support the award, we must examine the record to determine the correctness of that finding.

These briefs are largely devoted to the discussion of the question, "By whom was Mitchell employed at the time of his death?" That question we hereinafter consider in paragraph 4 hereof. But since it is also contended: (1) That there was no employment at the time of the alleged accident; (2) that there was no evidence of an accident; (3) that if there was employment and an accident, that accident did not arise out of and in the course of that employment, we first glance briefly at these points.

1. Mitchell was living at Cotopaxi, a station on the D. & R. G. railroad. Texas Creek, another station on that road, is some 20 miles distant therefrom in a north-

easterly direction. The work was being done at what was known as Camp No. 4 some distance beyond Texas Creek in the same direction. Between Texas Creek and Camp No. 4 was Camp No. 3. In going to and from his work Mitchell used his own car, a small roadster. The radiator of the truck had frozen and Mitchell, by long distance phone, had ordered, from the White Company at Denver, another radiator which was to be sent to Texas Creek, the nearest point to his work. On December 20, he drove his own car from Cotopaxi to the station at Texas Creek to see if the radiator had arrived and found that it had not. He then arranged with a Platt-Rogers employee to wait for it on a later train and by agreement with the Platt-Rogers timekeeper he took some mail and supplies belonging to that company to be delivered at Camp No. 3. He also arranged with the timekeeper, who was going to Cotopaxi, to ascertain if, by mistake, the radiator had been sent to that point, and report to him. His own car was found in the river about a mile from Texas Creek with his body and the mail and supplies under it. Thereafter his widow received from the White Company the unpaid balance of his wages; first a cash advance of $60 on December 23, 1927, because the exact amount due could not be ascertained; and the balance of $42.91 in cash on January 3. In making these payments the White Company's agent took receipts from Mrs. Mitchell. The first of these recites, ''On a/c S. J. Smith,'' the second, ''Payment in full of all wages and miscellaneous expense due Fred L. Mitchell, deceased, on account driving truck for S. J. Smith.'' Mitchell's status as an employee on the day of his death, be that what it may, was the same as on the preceding day. The evidence is overwhelming that he was then working for the White Company, or Platt-Rogers, or Smith.

2. Ten lines of the 44 page brief of defendants in error are devoted to their claim of no evidence of accident. They suggest no other possible theory of the cause

of death and none occurs to us. We think the evidence of accident amply supports the award.

3. If Mitchell was employed by some of these people on the day of his death, and if death was the result of an accident, we are unable to escape the conclusion that such accident arose out of and in the course of that employment. His residence at Cotopaxi was a temporary residence for the purpose of his work. The whole arrangement was understood by everyone and was clearly a part of the plan of employment. Indeed counsel are only able to make a plausible argument to the contrary by coupling it with a specific employer and contending that the accident did not arise out of and in the course of "any employment by the White Company." The entire dispute thus resolves itself into the principal question, "For whom was Mitchell working?"

4. In determining the identity of Mitchell's employer it is not difficult to find some ordinary, and often essential, element lacking in the evidence of employment by either the White Company, Platt-Rogers, or Smith. By that process of elimination it was apparently demonstrated to the satisfaction of the referee and the court that Mitchell must have been unemployed. But, if our own conclusion that he was the servant of one of the three is correct, and we begin the process of elimination from that angle, we find at the end of the road, as the commission eventually found, the White Company.

Smith had no control of this truck. No penny of its earnings passed through his hands. He did not contract for the services of Mitchell and had no power to discharge him. He had only learned indirectly where the truck was. He had surrendered it to the White Company, told them they could do as they pleased with it, and that he did not care what they did. It was sent to the Platt-Rogers Company as the result of a phone communication between representatives of that company and the White Company. True, the White Company kept what they called the Smith account, crediting to it the earnings of

the truck and charging against it all the expenses of operation including the wages of Mitchell. But it is idle to pretend that this piece of bookkeeping by the White Company could constitute Mitchell an employee of Smith.

Was Platt-Rogers the employer? In the phone conversation, out of which the employment of Mitchell arose, they quoted the White Company a per hour wage for truck and driver which covered "breakdowns." Under that arrangement Mitchell and his truck went to work. A part of his duty was to make the necessary repairs, not only on this truck, but on another sent down by the White Company of which he also had general control. In this Mitchell represented that company. He told Platt-Rogers what portion of the earnings were due him and this they deducted and paid before remitting to the White Company. He and his truck operated on the railroad job under the direction of the superintendent of Platt-Rogers who was authorized, for cause, to lay off a truck and its driver, but never separated them. No instructions were given direct, and no objections ever made, by the White Company. Mitchell made reports to the Platt-Rogers timekeeper, the last of which was dated December 16. Repairs for both trucks came from the White Company. Mitchell's per diem was fixed by the White Company and the instructions concerning payments, which he gave Platt-Rogers, were those given him by its sales manager. The final payment by the White Company to Mrs. Mitchell included Mitchell's long distance telephone call, concerning the radiator, made December 19. After Mitchell's death the truck was used on no other job, was sent back to the White Company, and by them sold about ten days before the first hearing herein. They had directed its transfer in the first instance to the Platt-Rogers' job. Mitchell received extra pay for keeping the two trucks in repair. This came out of the earnings of the trucks when at work. When out of commission on account of breakdowns, Platt-Rogers paid nothing, but Mitchell

was paid out of such earnings for the time he devoted to repairing the trucks.

We think the foregoing, clearly disclosed and practically undisputed, disposes of any presumption that Mitchell was the employee of Platt-Rogers, and leads to the irresistible conclusion that he was the employee of the White Company. What then, under the law applicable to workmen's compensation cases, was the true status of Mitchell and his truck?

If a vehicle with its driver be contracted by one employer to another, the driver remains the employee of the first. *Dale v. Saunders Bros.*, 218 N. Y. 59, 112 N. E. 571.

"A teamster who was regularly employed by a teaming company which hired out its teams with drivers to another, the teamster being paid by the company but being directed in his work by the other, is an employe of the company." *Rongo v. Waddington*, 87 N. J. L. 395, 94 Atl. (syllabus) 408.

Counsel for defendants in error note the words "regularly employed" in this, and similar language in other cases, and contend that the rule applies only in case of a prior, regular employment. We fail to see the distinction or any reason to support it. If the company specially employed the driver for the particular job, and in order to rent the truck he drove, the principle would be the same. The fact that Mitchell received his pay by checks from the Platt-Rogers Company, which they deducted from the total earnings of truck and driver under instructions from the White Company, conveyed to Platt-Rogers by Mitchell, could not change the employment. Platt-Rogers had nothing to do with Mitchell's wages and were not concerned with how the total amount due for truck and driver was distributed. The fact that Platt-Rogers paid nothing for either while the truck was broken down and being repaired, but that Mitchell continued to draw pay out of its earnings for making the

repairs, under the original contract between the White Company and Platt-Rogers, is most significant.

The judgment is reversed with directions to the district court to enter judgment affirming the findings and award of the commission.

MR. JUSTICE CAMPBELL not participating.