No. 12,886.

Public Service Company of Colorado v. Industrial Commission et al.

(3 P. [2d] 799)

Decided September 28, 1931.

Mr. Lowell D. Hunt, Mr. Jean S. Breitenstein, for plaintiff in error.

Mr. Clarence L. Ireland, Attorney General, Mr. Arthur L. Olson, Assistant, Mr. William E. Hutton, Mr. Bruce B. McCay, for defendants in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Martin Tittes, an employee of the Public Service Company of Colorado, a corporation, was injured in an accident arising out of and in the course of his employment, and subsequently died. His dependents filed their notice and claim for compensation, which, upon hearing before the referee of the Industrial Commission of Colorado, was denied because the referee found that Martin Tittes "died May 20, 1930, of pernicious anaemia which was not occasioned nor aggravated by any accident arising out of or in the course of his employment or otherwise." Upon review, the Industrial Commission of Colorado made its findings of fact and award, in which it found "that decedent, Martin Tittes, was injured in an accident arising out of and in the course of his employment, May 6, 1930, and died as a result thereof, May 20, 1930," and awarded compensation. The Industrial Commission thereafter, in a supplemental award, affirmed and approved its findings of fact and award. Upon trial of the cause in the district court, the supplemental award of the Industrial Commission was sustained and judgment accordingly rendered. The Public Service Company prosecutes this writ assigning as error the affirmance, by the district court, of the Industrial Commission's supplemental award.

There was evidence to the effect that decedent was a "handyman" about the carpenter shop of the Public Service Company, and, while so employed, an iron bar

with which he was working slipped and struck him on the left side of his head. It was first thought the injury was minor and trivial, but shortly thereafter when decedent went home from his day's work, he complained of dizziness, and stated that his head was aching severely and that he was annoyed by peculiar and unusual noises in his head; that night he suffered a hemorrhage from his mouth and nose and, in the next few days, developed a pallid color. The evidence is further that decedent consulted several physicians about his condition. One of the witnesses, a doctor of chiropractic, testified that, by use of some diagnostic machine, he detected a blood clot, which, in his opinion, was caused by the injury, and that the injury subsequently resulted in the death. This witness further testified that he made two examinations of decedent and found a very severe tenderness in the upper part of the neck and also that he found "a soreness in the back of the head with a slight rise in the tissues back there, quite a little swelling." One of the nurses who attended decedent at the hospital where he was taken shortly before his death, testified that decedent's conduct was such "that it looked as though he had a brain disturbance, judging from his actions." An attendant at a Turkish bath-house testified that four days after the date of the accident, when decedent was taking a bath, he complained about a tender place on his head, and asked attendant to be very careful when rubbing in that region. A physician who treated decedent shortly after the accident testified that decedent had pernicious anaemia, but that, in his condition, the injury affected him, and had some bearing on his death and might have hastened it, and also that the death, under the circumstances, was too unusual to be accounted for strictly by the pernicious anaemia, notwithstanding this physician, who was in attendance on Tittes at the time of his death, signed a death certificate giving pernicious anaemia as the cause thereof. The blood count taken from the records in the hospital, according to some of the witnesses who testified, was con-

clusive of the fact that Tittes had pernicious anaemia, and some of these witnesses, in answer to a hypothetical question propounded to them, gave as their opinion that pernicious anaemia was the cause of the death, and that the injury had nothing whatever to do with it. There is undisputed evidence that decedent was irrational and extremely violent during the last hours of his life, and had to be restrained while at the hospital. The criticism of the testimony of the doctor of chiropractic made by the the attorney for the Public Service Company does not destroy its weight or probative force; his testimony was admitted without objection and was entitled to such weight and consideration as those charged with the duty of determining this cause might see fit to give it, and there is nothing to indicate that this evidence was not properly received and considered.

The commission, if it had agreed with the witnesses who testified that decedent died of pernicious anaemia, not accelerated or aggravated by the injury, would have denied compensation. The effect of the injury was in dispute, the evidence upon this question being in direct conflict. We would be exceeding our jurisdiction in workmen's compensation cases if we attempted to pass upon the weight of the evidence in cases of this character; for the weight of the evidence is a matter exclusively for the determination of the Industrial Commission. It is only where there is no competent evidence to support the finding of the Industrial Commission that the court can interfere with its awards. *Industrial Com. v. Aetna Co.*, 88 Colo. 82, 84, 292 Pac. 229; *Industrial Com. v. Diveley,* 88 Colo. 190, 194, 294 Pac. 532; *Guidetti v. Industrial Com.*, 86 Colo. 587, 589, 284 Pac. 119; *New Jersey Co. v. Richey,* 85 Colo. 376, 378, 275 Pac. 937; *Industrial Com. v. Nissen,* 84 Colo. 19, 21, 267 Pac. 791; *Employers' Co. v. Industrial Com.,* 83 Colo. 315, 321, 265 Pac. 99.

The judgment of the district court is affirmed.