No. 13,991.

Estate of Stitzer.
Peterson, Executor *v.* Stitzer.
(68 P. [2d] 561)

Decided May 17, 1937.   Rehearing denied June 7, 1937.

Mr. Charles R. Hays, for plaintiff in error.

Mr. E. Meyer Rifkin, Mr. Morris Rifkin, Mr. Max Rifkin, Mr. Philip Hornbein, Mr. Otto Friedrichs on petition for rehearing, for defendant in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

On May 4, 1935, Clara B. Stitzer made her will; she died the next day. The will was lodged in the county court for probate and was contested by her husband Frank A. Stitzer, on the grounds of lack of testamentary capacity and undue influence. After the issue of undue influence was dismissed by the court, the question of testamentary capacity was submitted to a jury which returned a verdict finding the will to be "the last will and testament of Clara B. Stitzer, deceased." The contestant then appealed to the district court, where March 12, 1936, a jury returned a verdict that the will was not her last will and testament. Robert W. Peterson and Frank A. Stitzer were named in the will as executors. Herein reference will be made to Peterson as proponent, to the deceased as testatrix, and to Frank A. Stitzer as contestant. The proponent assigns error.

Testatrix, 65 years of age, died at Porter Sanatorium, in Denver, Colorado. Her husband Frank A. Stitzer, 95 years of age, to whom she had been married for 20 years, survived her.

Throughout the years of their married life, Mrs. Stitzer had given her husband constant care and attention due to his advanced years. She attended to practically all of their business affairs and by good management acquired several pieces of residence property which required her attention. In the later years of her life, she was quite deaf, and her eyesight very poor, not being able to do much reading, other than the headlines of the newspapers. During the fall and winter before her death, her husband, the contestant, became quite ill and required from her

much additional care which seemed to bear heavily upon her physical condition. She consulted their family physician, Dr. G. M. Edwards, who told her there was nothing wrong with her and insisted that if she would make an effort, she would feel all right. However, it appears from the medical testimony that during this time she was the victim of acute lymphatic leukemia, which was discovered after she went to the sanatorium and within a month prior to her death. The medical testimony further discloses that this disease affects the blood-forming organs but does not affect the mind except in a general way as any debilitating sickness would do. Realizing that she was in a weak and run-down condition, she decided to go to the sanatorium for rest and treatment. Mr. and Mrs. Peterson, upon whom she seemed to depend, were next door neighbors for a number of years and were intimate friends of the family. She requested Mr. Peterson to take her to the sanatorium, arrange for her care and look after the bills. He complied with her request, and took her there April 21, 1935, when she selected her room, talked with the doctors and nurses and decided upon the treatment she desired, being able to move about the sanatorium and go to and from the treatment rooms. Examinations, immediately following, disclosed her condition, which was revealed to her as a fatal disease. She conversed freely with her nurses and attending physicians, all of whom testified that during the entire period from the time of entering the sanatorium until her death, she was of sound mind. On May 3, the physician in charge placed her under the care of a special nurse. On the morning of May 4, she told Mr. Peterson she desired to make a will, and he then requested Mr. Hays, his attorney, to go to the sanatorium. There, in the presence of her nurse, she told Mr. Peterson what she wanted her will to contain and he made a memorandum giving it to the lawyer who prepared the will in a nearby room. While the will was being prepared, Mrs. Stitzer told her nurse, Mrs. Moore, to go to Mr. Peterson and tell him that she

desired to change her instructions so as to give $200 to Emily Ruprecht of California, a daughter of her husband by a former marriage. When the will was prepared Mr. Hays, the attorney, and Mr. Peterson returned to testatrix's room, where Mr. Fulton, the manager of the sanatorium, Mrs. Moore and Cleadith Hill, nurses, were present. Mr. Peterson read the will to testatrix paragraph by paragraph, asking her after the reading of each if that was what she wanted, to which in each instance she responded, "Yes." She was asked if she wanted Mr. Fulton and Mrs. Hill to sign as witnesses, and she responded, "Yes." Asked if she could sign the will, she said, "I think I can." She raised up in bed with some assistance, was handed a pen and attempted to sign the will which was before her in an almost vertical position. The result of her attempt is shown on Exhibit A, as an illegible scrawl. This attempt was made in the presence of Mr. Peterson, Mr. Hays, Mr. Fulton, Mrs. Hill and Mrs. Moore. She then was given an indelible pencil and asked to make a cross which she tried to do, breaking the point of the pencil and then, with the remaining portion, making a cross with the assistance of the nurse steadying her hand, after which Mr. Hays wrote her name and the words, "her mark." Each of the attending witnesses, Mr. Fulton and Mrs. Hill, and Mrs. Moore the other nurse who was present, testified that at the time Mrs. Stitzer signed the will, she was of sound mind. Dr. Moon, the attending physician, who saw her twice during that day, also testified that she was of sound mind. It is undisputed that testatrix conceived and dictated the terms of her will. The nurses, attending physician and the sanatorium manager all were disinterested witnesses. Mrs. Hill, the special nurse, heard all of testatrix's statements as to the bequests and remembered particularly her saying that she wanted her husband taken care of as long as he lived and that when he died she wanted the property to go to her three sisters.

The testimony adduced by contestant in support of the

claim of incapacity on the part of testatrix is to the general effect that she had peculiar and unreasonable notions and ideas, and on occasions acted and talked in a queer manner and did things that a rational person of sound mind would not be expected to do. None of these witnesses was present at the time of the making of the will. Dr. Leo V. Tepley, who had never seen Mrs. Stitzer, stated in response to a hypothetical question, thirteen folios in length, and as a conclusion based upon the question and the testimony he heard in the court room, that in his opinion she was of unsound mind and memory. However, upon cross examination, he said, "If, for instance, one should tell me that she actually dictated a will instead of answering 'yes,' I would certainly change my opinion unhesitatingly." Contestant for the purpose of comparison of the signature of testatrix on the will with her signature made under other conditions and circumstances, introduced, over the objection of proponent, Exhibit 1, a check on the Colorado National Bank, signed by her January 14, 1935. Proponent assigns error to the admission of this exhibit, contending that it was prejudicial to the proponent and that it was equivalent to telling the jury that testatrix did not sign her will and did not have mental capacity to make a will.

There is no issue here as to the execution of the will. There is no evidence to the effect that testatrix did not intend her signature and cross mark to be authentication of her will. The question is not whether she could write her name, but whether she had mental capacity at the time to direct the making of the will and its execution. It is not disputed that she tried to sign the will, and from its appearance and from the testimony, unquestionably she made the necessary effort, and asserted mental strength, but could not overcome her physical weakness. This conclusion is inescapable when the support therefor is the positive testimony of intelligent and disinterested witnesses who say that she dictated the terms of her will and when read to her, paragraph by

paragraph, spoke her approval; that during the time of the writing of the will, she directed an addition or change to be made and immediately took part, so far as her physical condition permitted, in the signing of the document. All of this occurred, as the record now speaks, without undue influence of any nature. The verdict of the jury, with this positive evidence before it, is contrary thereto and cannot stand.

In support of our conclusion we cannot overlook the fact that the will is a natural one, without any indication in its terms of a distorted or unsound mind. From the standpoint of the admitted financial circumstances of testatrix and contestant, it is a reasonable and just disposition of her property which her physical condition should not, and did not, deprive her of the right to make. It is admitted contestant is in good financial circumstances. It is not disputed that the property of which disposition is made by the will, was the separate property of testatrix. There was a $300 bequest to each of two nieces, a $500 bequest to another niece to be paid to her when she arrived at the age of forty years, and $200 each to Mr. and Mrs. Peterson, long intimate friends who were giving her care and attention in the closing days of her life; $200 to contestant's daughter by a former marriage; a player piano to another niece, and the balance of the estate was bequeathed to contestant to be held and enjoyed by him during his lifetime and after his death to go to three sisters of testatrix. By this will contestant, 96 years of age, was deprived of nothing of consequence except the opportunity, which he apparently seeks, of having the property of testatrix finally go to his children by a former marriage or other of his heirs. Fairness and justice support the effort of testatrix in a reasonable and natural disposition of her property, which should not be vulnerable to attack, as finally appears, upon the ground that her signature was not written as usual. When it is established as here, that the testatrix's mental conception of what she was doing was clear, and

that she desired to sign the will, her participation in an attempt to sign it, however slight, renders the signature sufficient, particularly when acquiesced in or adopted by her in the circumstances here appearing. The opinion of the expert is entitled to but little weight when opposed to the facts and circumstances appearing at the time, and surrounding the making and execution of the will. These carry their own inescapable inference. Moreover, the opinion of the physician in attendance should have carried more weight than that of the expert based as it was on hypothetical questions and not upon any personal knowledge of the facts.

If juries cannot or do not interpose to maintain the legal standards of testamentary capacity by the rejection of pure speculations of employed experts, then the courts must assume that responsibility; otherwise no person can have any assurance that he can rely upon the uncontrolled acts of his mind to make disposition of his property in keeping with the law, or that his wishes will be carried into effect.

The judgment is reversed and the cause remanded with directions that such orders be entered as will establish the Exhibit A as the last will and testament of testatrix, that it be admitted to probate, and that the costs of this case be taxed against contestant.

Mr. Chief Justice Burke and Mr. Justice Knous concur.