No. 14,745.

INDUSTRIAL COMMISSION ET AL. *v.* MCKENNA.
(104 P. [2d] 458)

Decided July 1, 1940.

Mr. BYRON G. ROGERS, Attorney General, Mr. FRANK A. BRUNO, Assistant, Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, for plaintiffs in error.

Mr. EUGENE A. BOND, Mr. HAROLD A. GRANT, for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE Moraine Mining Company and State Compensation Insurance Fund prosecute a writ of error to reverse a judgment of the district court of Lake county in favor of the widow and surviving children of Charles A. McKenna, deceased. The court set aside an award of the Industrial Commission denying compensation to them with instructions that the commission enter an award granting compensation in accordance with the provisions of the Workmen's Compensation Act.

The parties will be herein designated as the deceased, the claimants, the employer, and the insurer.

■ Deceased was employed as a mucker in the employer's mining operations in the vicinity of Leadville. On the day that he came to his death he and another workman, DeLong by name, were engaged in removing broken rock that had been shot down in one of the drifts in the mine. They had worked about seven hours of their eight-hour shift. It was their duty to clear the drift during their shift. Twelve to fourteen cars of broken rock was a reasonable quantity for two men to remove during one shift. On this particular day the two men had cleared away sixteen cars during the first seven hours of work and there still remained four or five carloads to be removed to clear the way for the next crew. The evidence is clear that they had performed an unusually hard day's work. Some time before this deceased had remarked about the work being "exceptionally hard-

er" than it had been and that he was tired. DeLong testified that deceased, though a small man weighing about 130 pounds, was a fast and hard worker. About an hour and a quarter before the shift ended deceased returned from pushing a car of rock down to the shaft and found that DeLong, in lowering another car down the incline, which was about a 35° slope, into the drift had derailed the car about fifteen or twenty feet from the top of the incline. Deceased went down to the car to lift and pull it back onto the track and DeLong remained at the top to slacken the cable with which it was being lowered. While deceased was lifting on the car, which weighed about 800 to 1000 pounds, DeLong saw him slump over, and upon going to him found him unconscious. He pulled him up into the tunnel and about this time Brady, the shift boss, came along and he and DeLong gave the deceased such first aid as they could by rubbing his body. His wrists they found cold. As soon as possible they conveyed him to the top of the shaft and called a doctor who, upon an examination, found that the man was dead.

Upon the hearing Dr. McDonald, the physician who had been called to attend deceased, was asked if he had an opinion as to what caused the death. He answered that he had, that in his opinion the deceased died of acute heart failure or acute dilatation of the heart; that it was his further opinion from the history of the case that this was caused from overexertion. On cross examination he testified that death could have been caused from a stroke or from a "shower of emboli or from a coronary thrombosis" and that an autopsy might or might not have disclosed definitely the cause of death. He further testified that overexertion can cause death in other ways than by acute dilatation of the heart.

The only testimony introduced by the employer and the insurer was that of Dr. Fitzgerald, which was to the general effect that he did not feel that he could give a definite opinion as to the cause of death without an

autopsy, and that in his opinion an autopsy would have disclosed the cause of death. He did not state that death was not caused by dilatation of the heart, but he did testify that he had examined the deceased some time before his death and thought that he was suffering to some extent from silicosis, or miner's consumption, and that overexertion in connection with this condition might have produced a coronary embolism or a thrombosis with an embolic shower. It does not appear that there is any conflict in the testimony of the two doctors as to there being an adequate cause to produce an acute dilatation of the heart nor that such cause was also adequate to produce other conditions which might have caused the death. We are unable to see how the right to recover in this case would have been affected either one way or the other had an autopsy been performed and disclosed definitely that death resulted either from an acute dilatation, a coronary thrombosis, or an embolic shower brought on by overexertion. Death from any of these causes so put in operation would have been an accidental death.

■ The employer and the insurer requested permission to have the body disinterred and an autopsy performed. The widow would not consent that this be done. It is conceded by all parties that there is no provision of the law entitling either the employer or the insurer to have an autopsy performed over the objection of the widow. We think this leaves the case in exactly the same situation as though no autopsy had been suggested or even thought of.

■ The real issue in the case is set forth in the brief of the attorneys for the employer and the insurer in these words: "The sole issue which the commission was called upon to decide, and which it has resolved by its findings herein, was simply whether or not the death of the deceased was occasioned by accident arising out of and in the course of his employment." As to the applicable principles of law there is no essential difference

between this case and that of *Industrial Commission v. Wetz*, 100 Colo. 161, 66 P. (2d) 812, where an acute heart dilatation was established clearly by an autopsy and the evidence was largely circumstantial as to there being an adequate producing cause. In the present case there is ample direct evidence of an adequate producing cause and the evidence that there was a dilatation is not established by an autopsy but is partly circumstantial and partly the opinion evidence of the doctor called in to make the examination. Circumstantial evidence and the opinion evidence of a qualified physician that deceased's death was the result of an acute dilatation of the heart brought on by overexertion is competent to establish that fact. This evidence is not controverted. It was proper, therefore, the commission having elected to dispose of the matter on the testimony contained in the record, for the district court to enter its judgment directing the commission to award claimants compensation benefits as provided by the law.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE KNOUS concur.