No. 15,042.

COORS PORCELAIN COMPANY ET AL. *v.* GRENFELL.

(121 P. [2d] 669)

Decided January 19, 1942.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Hr. MORRY M. STERLING, As-

sistant, Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, for plaintiffs in error.

Mr. BYRON ROGERS, Mr. FRANK A. BRUNO, for defendant in error.

*In Department.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS is a proceeding under the Workmen's Compensation Act which differs from many other "heart" accident cases originating before the Industrial Commission, in that here there is no conflicting testimony of witnesses and essential evidence borders on the meagre. The only witnesses in the case whose testimony bears on the question involved were two — both called by claimant Grenfell, the father of the deceased.

Dr. Howlett stated that the autopsy showed that the heart was "in bad shape and had been for a time." He gave no definite opinion as to the cause of death. One of his statements was that in the condition the heart was in, the work Grenfell, Jr. "was engaged in *would* have been sufficient to produce death" and that "the strain of work and exertion *could* be the immediate producing factor of causing the death." Another statement appearing in the record is, that "the heart was just like a clock that was about to run down and was ready to stop anyway; that whether lifting or straining actually caused it to stop at that moment or whether it was just the natural progress of the disease is something no one can tell." On cross-examination the witness further stated that if the heart stopped from strain the symptoms would most likely come on in the middle of the strain.

The other witness, D. C. Bradley, a fellow employee and the deceased's immediate superior, testified as to

circumstances surrounding the death; that the deceased had been at work for three hours that morning; that the work involved lifting heavy objects, but that deceased had most recently been engaged in the lighter side of his work and that at the time death overtook him he was actually empty-handed.

The commission approved, affirmed and adopted the finding and order of the referee, which were as follows:

"Upon hearing it appeared that the decedent, James Grenfell, was employed by the respondent employer at an average weekly wage of $18.00. On December 23, 1940, he was engaged in his regular work which on this particular day consisted of moving tile weighing three hundred to three hundred fifty pounds each into a kiln using in this process a small two-wheeled hand truck. There were other persons engaged in this same job who were doing heavier parts of the work consisting in lifting and moving the tile. After some time at this work on the day in question, claimant left the kiln and went outside where he was overcome. He regained consciousness three or four minutes later and indicated a desire to go home. He then relapsed into unconsciousness and when the doctor arrived was pronounced dead.

"As the result of the post mortem examination of the decedent it was found that the heart was dilated to three or four times its normal size. Approximately 1000 c.c. of fluid were in the pericardial sac around the heart. There was found an old myocardial infarct and a focal endocarditis which had resulted in a large mural thrombosis almost filling the left ventricle of the heart. This condition was of long standing and from medical testimony at the hearing it appears that the death of the decedent was a natural and eventual result of his heart condition. It further appears that it is impossible to determine whether any effort on the part of the decedent would have contributed to his death at the time when it occurred. His condition was advanced enough to have resulted in his death at any time under any circum-

stances, and the Referee, therefore, finds that there is no showing that the decedent suffered an accident arising out of and in the course of his employment which resulted in any injury to him or which caused his death or contributed to his death in any way.

"It is, therefore, ordered: That claimant's claim for compensation benefits, be and the same is hereby denied."

Subsequently the district court for the City and County of Denver vacated the award of the Industrial Commission and remanded the case to the commission with directions to make an award in favor of the claimant, from which award and judgment the matter comes to this court on writ of error.

No written opinion of the district court appears in the record showing the basis of its action, but the insurer and employer's brief charges that in the arguments of counsel before the district court, two cases—*Industrial Commission v. Wetz,* 100 Colo. 161, 66 P. (2d) 812 (decided in 1937), and *Industrial Commission v. McKenna,* 106 Colo. 323, 104 P. (2d) 458 (decided in 1940)—were mentioned by the District Judge as the controlling cases and as justification for his judgment. Claimant's brief does not deny this statement. Justice Young wrote the opinion in both cases—in the Wetz case the majority opinion en banc with two dissenting; in the McKenna case in department with three Justices concurring. These two cases are referred to extensively in all of the briefs filed.

Claimant's attorneys argue that the cases are similar to the instant case and therefore control; attorneys for the Industrial Commission and the employer claim that the cases are different and can be clearly distinguished from the present case. We, therefore, consider these two cases.

In the Wetz case the deceased, starting work at 7:30 o'clock in the morning, was, about 9:15, instructed by his superior to cross the street to start a Fordson tractor

belonging to the street cleaning department of the City and County of Denver. Due to zero temperature, the building had been kept closed and that morning there were fifty to fifty-five trucks that had been started in the same building where the tractor was standing; the discharge from the motors consisting of both carbon monoxide and carbon dioxide gas was noticeable. One of the witnesses who was in the building that morning stated that the gas "sort of knocked him out."

There was testimony showing that the starting of a Fordson tractor involved cranking it and some extra exertion as a result. There was evidence to show that the decedent had placed himself in front of the Fordson, with his left hand on the radiator in the position for cranking the machine. Ten minutes later he was found beside the tractor, dead. The autopsy disclosed dilatation of the heart, and also the existence of a foramen ovale from the left to the right auricle covered by a flap on the inside of the left auricle. There was also evidence to show that Wetz had always appeared to laymen to be in good health, that he had never complained of ill-health. The Industrial Commission found that there was no evidence of exertion, and against the claimant. The district court of the City and County of Denver set aside the order of the commission denying death benefits and remanded the case with directions to enter an award in favor of the claimants. When the matter came up on writ of error to this court [100 Colo. 161, 66 Pac. (2d) 815], the majority found that "the dilatation, which is not controverted, under competent medical testimony is adequately explained by overexertion under the atmospheric condition shown to be present and, in the opinion of the autopsy surgeon, by the atmospheric condition alone;" and also that the finding of the commission that there was no evidence the decedent at any time exerted himself strenuously was erroneous, as the record disclosed that there was such evidence; that the trial court was right in holding that,

as a matter of law, there was uncontroverted evidence of a sufficient cause of dilatation, namely: Either overexertion or a gas-laden atmospheric condition, or both, and that, "Having found, as a matter of law, that there was uncontroverted evidence showing exertion and that exertion, under the circumstances, was an adequate cause of heart dilatation which produced death, and the findings of the commission on uncontroverted evidence clearly showing that such cause arose out of and in the course of the employment, under section 4481, C.L. 1921, it was proper for the district court to order the commission to enter the proper award."

In the McKenna case the deceased was employed as a mucker in the employer's mining operations. On the day when death occurred he had worked about seven hours of the eight hour shift in removing broken rock that had been shot down in one of the drifts of the mine. Twelve to fourteen cars of broken rock was a reasonable quantity for two men to remove during one shift. On this particular day the two men, one of whom was decedent, had cleared away sixteen carloads during the first seven hours of work and there still remained four or five carloads to be removed to clear for the next crew. Evidence was clear that they had performed an unusually hard day's work. Deceased had remarked about the work being exceptionally harder than it had been, and he was tired. Shortly thereafter he slumped over and died. The attending physician gave it as his opinion that the deceased died of acute heart failure or acute dilatation of the heart and that this was caused from overexertion. On cross-examination he testified that death could have been caused by a stroke or from a shower of emboli or from a coronary thrombosis. An autopsy was refused by the family of deceased. The doctor for the insurance company and the employer stated that he could not give a definite opinion as to the cause of death without an autopsy, and stated that he had examined the deceased sometime before his

death and thought he was suffering to some extent from silicosis, or miner's consumption, and that overexertion in connection with this condition might have produced a coronary embolism or a thrombosis with an embolic shower.

The Industrial Commission denied compensation to claimants and the district court of Lake county set aside the award of the commission. The case was brought to this court on writ of error. The opinion (106 Colo. 323, 104 P. [2d] 459) included this statement: "It does not appear that there is any conflict in the testimony of the two doctors as to there being an adequate cause to produce an acute dilatation of the heart nor that such cause was also adequate to produce other conditions which might have caused the death. We are unable to see how the right to recover in this case would have been affected either one way or the other had an autopsy been performed and disclosed definitely that death resulted either from an acute dilatation, a coronary thrombosis, or an embolic shower brought on by overexertion. Death from any of these causes so put in operation would have been an accidental death." The court held that there was no essential difference between the McKenna case and the Wetz case.

We believe that the facts in the instant case are so different from those in the McKenna and the Wetz cases that those two cases are not controlling here. It will be noted that in both, the court based its opinion on the fact that there was uncontroverted evidence to sustain the action of the respective district courts that had set aside the finding of the Industrial Commission in those two cases. In this case there is no definite opinion of an examining physician that death was due to any particular reason but that it could have resulted from either of two causes, leaving the commission to determine which cause was operating in this particular case. The commission found *against* the claimant, but the brief of

the attorneys for the commission and the insurer admit that if the commission had found *for* the claimant there was sufficient evidence to justify its findings that way. Like the ambivalence existing in nature, here is a case where the evidence would have supported either of contrary findings.

It is to be noted that in this case the deceased, when death overtook him, was engaged in the usual ordinary or normal routine; whereas, in the Wetz and McKenna cases, the deceased was engaged in some extraordinary effort, or some abnormal or unusual undertaking when the fatal heart attack occurred. Death occurred in the instant case in the morning of an ordinary day's routine, with other circumstances being normal. In the McKenna case, death occurred toward the end of the day's routine, with more than a day's work in productive capacity already exceeded, due to the exigencies of the mine operations, thus causing overexertion. It is true that in the Wetz case death also occurred in the morning of the day's work, but there the unusual situation was not the amount of labor that had already been imposed upon the deceased, but the abnormal working conditions in the gas-laden atmosphere, coupled with the need for extra exertion in cranking a Fordson tractor under such atmospheric conditions.

In the instant case there was direct evidence of a pre-existing aggravated heart condition which might well have caused the termination of life at any time. In the Wetz and McKenna cases there was no evidence of any such aggravated, pre-existing heart ailment as to raise the inference that death might have occurred in the course of employment but at the same time without arising out of the employment.

■ It is our opinion that in this case the Industrial Commission had before it sufficient evidence to justify a finding that, although death arose in the course of employment, it did not arise out of the employment. It

did make such a finding as required by the case of *Ellermann v. Industrial Com.*, 73 Colo. 20, 213 Pac. 120.

We therefore hold that the district court erred in vacating the commission's award, and its judgment is accordingly reversed.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE KNOUS and MR. JUSTICE BURKE concur.