No. 15,251.

BLACK FOREST FOX RANCH, INC. ET AL. v. GARRETT ET AL.
(134 P. [2d] 332)

Decided February 1, 1943.   Rehearing denied February 23, 1943.

324

Mr. ALIOUS ROCKETT, Mr. LOUIS SCHIFF, Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. ST. GEORGE GORDON, Assistant, for plaintiffs in error.

Mr. JOHN R. TURNQUIST, for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS controversy relates to the claim of defendants in error, respectively the widow and grandson of Thomas F. Garrett, a deceased employee, for workmen's compensation benefits allegedly due them because of his death. Concluding that his death was not the result of

an accident arising out of and in the course of his employment, the Industrial Commission denied the claim. In an action for review prosecuted by claimants, the district court considering the commission's finding contrary to the uncontradicted evidence, vacated the order and directed the commission to enter an award of compensation benefits in favor of claimants. The employer, the insurance carrier and the commission here seek a reversal of the judgment of the district court.

The employer was engaged in the business of breeding foxes. Deceased, sixty-five years of age, was employed as a ranch hand or general utility man. On the afternoon of September 6, 1941, deceased, with other employees, was engaged in rounding up and recapturing some foxes which had escaped from their pens. In cornering one of these foxes the men were "working fast upgrade." After the fox was cornered the men jumped back and forth rapidly in order to hold the fox in the corner. The whole maneuver consumed about five minutes. By the time the fox was caught deceased was "pale and yellow," as well as short of breath, and had to hold on to the fence to support himself from falling. Later in the day, after resting, he undertook to continue his work but without marked success. He did not report for work the next day but resumed his duties on September 11. He then worked for three days at light tasks but had a relapse and did not report again until October 20, when he was assigned to the performance of office duties. October 25, after returning home from his employment, he died of a heart attack. It further was testified that following the incident of September 6, decedent continually complained of feeling unwell and never thereafter regained the physical ability he had enjoyed previously. In seeking compensation benefits claimants naturally proceeded upon the theory that death of the employee was causally related to his physical exertion in chasing the fox. As the basis for concluding adversely to this contention the findings of the referee—adopted

by the commission—recite: "It appears from the medical testimony and the Referee so finds that the coronary occlusion or thrombosis which caused the death of the decedent occurred from three to five days prior to the death of the decedent and that it was not caused by the exertion above mentioned. The lay testimony indicates that after decedent exerted himself he felt sick and weak. The Referee finds from the testimony that this illness was due to ischemia which deceased suffered at the time he exerted himself. This ischemia was temporary and decedent had completely recovered from it at the time he suffered the coronary occlusion or thrombosis which caused his death."

From the record it is evident that the expression "coronary occlusion or thrombosis" is used in the commission's findings as being descriptive of a closure (occlusion) of the coronary vessels by the formation of a clot of blood therein or within the heart (thrombosis). The term "ischemia," meaning a lack of blood, appears to have been employed in the findings as referring to a deficiency in the blood supply to the heart muscle.

It is not disputed that in this jurisdiction, a death which ensues as the result of a heart attack brought on by overexertion arising out of the employment, is accidental within the meaning of the Workmen's Compensation Act. *Ellermann v. Industrial Commission,* 73 Colo. 20, 213 Pac. 120. It also is certain that in workmen's compensation cases reviewing courts may not interfere with the findings of the commission if there is competent probative evidence in support thereof. It is only when the showing made is without probative force and effect, or is of such a character as not to constitute any legitimate evidence, that the commission's award will be disturbed. *New Jersey Fidelity Ins. Co. v. Richey,* 85 Colo. 376, 275 Pac. 937. Thus, as the parties concede, the only question for determination here is whether the findings of the commission have support in the evidence.

Six qualified physicians and surgeons gave their testimony in the several hearings on this matter. Two of these expert witnesses had examined the decedent in his lifetime following the fox chase and also were present at the autopsy following his death. Another was the prosector in the autopsy and the remaining three testified hypothetically upon the basis of the autopsy report and the case history as shown by the evidence adduced at the hearings before the referees. All agreed that the immediate cause of Mr. Garrett's death was a coronary thrombosis or occlusion which had occurred at some time within the week prior to his death. It also was unquestioned, as the autopsy disclosed, that Garrett had an advanced generalized arteriosclerosis with involvement of the coronary vessels and had suffered at least one thrombosis previous to that which caused his death. The two physicians who had examined deceased before his death, considering, in addition to the pathological conditions last mentioned, an incompetency of the mitral valve, testified that as a result of his exertions in the fox chasing episode, deceased had an acute dilation of the heart following which as a progressive process he had the fatal coronary occlusion and that the mentioned overexertion so was the precipitating cause of his death. Contrarily, the other four physicians were as positive that Garrett's death was without relation whatsoever to his exertions on September 6. Unanimously they testified that the death was due to a degenerative process of the vascular system arising from natural causes (severe coronary arteriosclerosis with multiple thrombi and old and recent myocardial infraction). They further testified that Garrett's disability following the fox chase arose from a deficiency of blood for the heart muscle (ischemia) brought about by his exertions and which was intensified by the inelastic condition of his blood vessels. The four agreed that there was no causal connection between this ischemia, said to have been temporary, and the subsequent thrombosis. They further

stated as a general proposition that a coronary thrombosis was not influenced by exertion and that death therefrom usually came when the victim was in repose or at rest. That the testimony, even as shown by this brief synopsis, presented a problem of conflicting evidence ladened with perplexities for a fact-finding tribunal is plain, but such also demonstrates with certainty that there also was competent evidence to support the findings of the commission. In this state of the record it was error for the district court to set aside the findings and order of the commission. *Coors Porcelain Co. v. Grenfell,* 109 Colo. 39, 121 P. (2d) 669.

■ That expert medical testimony given in a hearing before the Industrial Commission may be considered as substantial, credible evidence is well established in this jurisdiction. *Skjoldahl v. Industrial Commission,* 108 Colo. 140, 113 P. (2d) 871. The weight to be accorded such testimony, as well as the other evidence adduced, is a matter exclusively for the determination of the commission. *Public Service Co. v. Industrial Commission,* 89 Colo. 440, 3 P. (2d) 799. Certain comments in the opinion in *Peterson v. Stitzer,* 100 Colo. 521, 527, 68 P. (2d) 561, cited by claimants, with reference to the relative weight which should have been accorded the testimony of certain experts answering hypothetically in contradiction of witnesses with personal knowledge of the matter in dispute in that case, cannot be given the effect of announcing a rule eliminating the medical testimony in the case at bar adverse to claimants' theory because the expert witnesses so testifying had not examined deceased in his lifetime.

The circumstance that the evidence in the case at bar was in conflict with respect to the vital question, of whether the death of the employee was causally related to his exertions during employment, makes the cases of *Industrial Commission v. Wetz,* 100 Colo. 161, 66 P. (2d) 812, and *Industrial Commission v. McKenna,* 106 Colo. 323, 104 P. (2d) 458, inapplicable here, since it clearly

appears from the opinions therein, as well as the one in *Coors Porcelain Co. v. Grenfell, supra,* that in such cases it was uncontroverted that overexertion arising out of and in the course of the respective decedents' employment brought on the fatal heart attacks.

The judgment of the district court is reversed.