## No. 15,537.

### A. Carbone & Co. et al. *v.* MacGregor.

(155 P. [2d] 994)

Decided January 29, 1945. Rehearing denied February 19, 1945.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Miss Barbara Lee, Assistant, Mr. Louis Schiff, Mr. Alious Rockett, for plaintiff in error.

Mr. Frederick P. Cranston, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

A proceeding in a death claim matter under the Workmen's Compensation Act. A. Carbone and Company was the employer, John Alexander MacGregor (deceased) was the employee, Claire MacGregor, widow, and Ruth Mary MacGregor, minor daughter of MacGregor, were the claimants, and the State Compensation Insurance Fund was the insurer. The commission held adversely to claimants, but in an appropriate action, the district court ordered the award of the commission vacated, and directed it "to enter an order * * * for the full death benefits as provided by law."

The claim was that, due to an accident occurring March 12, 1942, when deceased's "car slipped off the highway into a snow bank," his death resulted "from shock and bruises" suffered in the accident. The referee's finding and order, which in due course became the determination of the commission, reads as follows:

"John Alexander MacGregor was employed as a salesman by the above named respondent employer. On March 12, 1942, decedent was driving his car along the road leading from Montrose to Cerro Summit. The weather was storming and snowing and the road was slick. Decedent's car stalled a couple of times while he was driving toward the top of the Summit and he had to receive assistance from a highway maintenance patrolman. The patrolman assisted the decedent but at no time did decedent have to leave the car. While decedent was sitting in the car he died suddenly.

"The Referee finds that the cause of death was coronary occulsion. Claimant contends that fear and shock brought on by the surroundings and slippery road condition contributed to the death of decedent. Decedent had been troubled with heart attacks for several years prior to the date of his death. The Referee finds that he was suffering from arteriosclerosis and that his condition progressively became worse. The vessels gradually grew smaller due to this condition until finally decedent suffered the coronary occulsion which caused

his death. Decedent did nothing which would cause exertion while he was stalled on the Cerro Summit.

"The Referee finds that the fact that decedent was stalled on the summit and the fact that the weather was stormy and the road slippery in no way contributed to the death of decedent but that decedent's death was due to coronary occulsion which was the result of a long standing arteriosclerosis. The Referee, therefore, finds that this claim for death benefits should be denied."

It appears that at the time of the deceased's passing, he was proceeding from Montrose to Gunnison in the course of his employment; that near Cerro Summit, while thus proceeding, and while seated in his car, death from heart attack suddenly came to him; that just preceding his death his car slipped so that one rear wheel rested in a snowbank; that although deceased had not gotten out of his car, it appeared evident to a state highway maintenance patrolman who was then "working" that particular highway, that, since the wheel in the snowbank was spinning, but without traction, deceased was unable to extricate himself from his stalled position, or the car under its own power; that the patrolman applied a quantity of salt to the "spinning" wheel, with the result that deceased was able to regain the traveled portion of the highway and proceed on his journey; that he had gone scarcely more than one hundred fifty feet, when, as the patrolman, who stood and was watching the course of the traveler, testified, his car suddenly proceeded at accelerated speed, and almost at once the rear wheels slewed around until the car, with the exception of spinning rear wheels, stood still across the highway at an angle of about forty-five degrees; that purposing to be of further help to the traveler, the patrolman went to the car and found that the occupant was dead, death evidently having ensued within the very brief time that the deceased's car was going the short distance indi-

cated. There was no evidence that "overexertion" physically entered into deceased's movements in the course of his travels that morning, nor did it appear that he experienced mental fear, or shock or disturbance, although, for purposes of the examination of expert witnesses, it was assumed that deceased underwent some degree of emotional strain or "psychic shock." It did appear that for some two years immediately preceding his death, deceased had suffered several severe heart attacks.

The showing in mind, three competent medical witnesses testified that deceased came to his death as the result of what the commission understandingly summarized as "coronary occulsion which was the result of a long standing arteriosclerosis." Those physicians further testified to the effect, generally, as one of them stated, that, "Arteriosclerosis is a progressive disease. That is, there is a gradual narrowing of the lumen of the arteries of the body and a decrease of their elasticity and as the athrombia get on the artery it narrows the lumen and as it keeps progressing it will close it off." They agreed to the effect, quoting from the testimony of another of them, that deceased "would have died at about the same time regardless of the conditions of the road and the weather and the experience that he had getting off to the side of the road." The third of those doctors was of like opinion, and specifically testified that the previous heart attacks which deceased had experienced made it "even more likely he died of coronary occulsion. * * * The only logical conclusion would be he had sclerosis of the coronary blood vessels, leading at previous times to attacks of heart pain and at this time they became occluded leading to a sudden death." When asked what importance he attached to the situation attending the deceased's experience at Cerro Summit, all details being stated in the question, the doctor testified that he believed it to be "of no significance in coronary occulsion." "Q. Have you any

opinion as to whether or not these accidents as related in any way precipitated the coronary occlusion? A. Coronary occlusion is an obstruction and with the obstruction it is not influenced by this type of fear. * * * Since the cause of his death is an obstruction of the coronary vessel fear or apprehension has nothing to do with it. * * * I think this man died suddenly of an occlusion. I think fear or anger or emotions had nothing to do with it."

Medical experts called by claimants gave expression to views in conflict with those advanced by physicians to whose testimony we have just referred. Proceeding, as was its duty in the premises, the commission found that the truth lay with the physicians who testified against claimants rather than those who testified in their favor. The question is, Does the commission's finding conclude the courts? The trial court was of the negative view, and, as we have seen, adjudged in favor of claimants.

 In the rather early case of *Ellerman v. Industrial Com.*, 73 Colo. 20, 213 Pac. 120, a situation not dissimilar was considered in an en banc opinion by Mr. Justice Burke. The deceased there suffered a sudden heart attack and died almost immediately. There, as here, and "in every workmen's compensation case," as Justice Burke said, there are "three questions: (a) Was the death due to an accident? (b) Did the death occur in the course of the employment? (c) Did the accident arise out of the employment?" Here, as there, whatever it was that happened, "occurred 'in the course' of his employment." Deceased was proceeding to the next stopping place on an itinerary determined by his employer. There, precisely as here, the medical experts were in disagreement. One physician testified that death resulted from what the deceased was doing at the time, and that if he "had been doing ordinary work, or sitting or walking, he would not have died." Another member of the profession, first stating his opinion

as to the nature of the heart attack suffered by the deceased, testified that he "might have died suddenly after a hearty meal, or through some emotional excitement, or walking upstairs; that he might have died at the same time if he had not lifted the load, and would have died from the same cause in the ordinary exertion of daily life; that he might have dropped in an instant while walking on the street." We there directed the district court to return the case to the commission for additional findings of fact, and that the commission "Determine whether the death was due to overexertion. If Dr. Dryer is correct it was. If Dr. Van Meter is correct it was not." In the instant case, the commission, proceeding to make disposition of the question born of the disagreement of two groups of physicians, which it had not done in the Ellermann case, determined that MacGregor's death was not due to anything that arose out of his employment. In *Cordillo v. Industrial Com.,* 110 Colo. 581, 136 P. (2d) 571, Mr. Justice Knous, addressing himself to a question like unto our present one, and where the physicians were in disagreement said: "Obviously, the controlling question was one which must be determined from expert medical testimony. That such testimony may be considered as substantial, credible evidence is well established in this jurisdiction (*Skjoldahl v. Industrial Commission,* 108 Colo. 140, 113 P. [2d] 871; *Iron Works v. Radovich,* 94 Colo. 426, 30 P. [2d] 1108), and the weight thereof is a matter exclusively for the commission (*Public Service Co. v. Industrial Commission,* 89 Colo. 440, 3 P. [2d] 799). In this situation, following a long and unbroken line of decisions, we cannot set aside an award of the Industrial Commission based on conflicting evidence of this nature. See, *Black Forest Fox Ranch, Inc. v. Garrett,* 110 Colo. 323, 134 P. (2d) 332, and *Skjoldahl v. Industrial Commission, supra.*"

We have been at pains to examine *Industrial Commission v. Wetz,* 100 Colo. 161, 66 P. (2d) 812, empha-

sized by counsel for claimants. There, unlike the present situation, although deceased died of heart dilatation, it was not shown that he had been other than in good health before the accident resulting in his death, nor that he had ever complained of ill health. Again, as stated by Mr. Justice Young in the opinion in the case, "there was uncontroverted evidence of a ·sufficient cause of the dilatation; namely, either overexertion or a gas laden atmospheric condition, or both." The author of the opinion also remarked upon the fact that there was "absence of any testimony of other medical experts as to any other probable cause of dilatation." It also is to be noted that in that case the commission resolved the controlling fact in favor of the claimants.

The point that the experts testifying in behalf of plaintiffs in error were not examined in the light of testimony relative to deceased's heart attacks, but only as to earlier testimony in which deceased's previous illness had not been presented, is not correctly premised. The record shows they testified in chief and on cross-examination about deceased's heart condition as otherwise then had been made to appear. It was in relation to the heart attacks which deceased had suffered, what they portended and how they would eventuate, that the experts were in disagreement.

We concur in the Attorney General's expressed "sympathy for the claimants," and in the trial judge's decision we recognize the generous heart promptings for which he is known and beloved, but, as we think, the unfavorable findings by the tribunal authorized by the enactment on which the claim is presented, to make them, concluded the trial court and likewise concludes us.

Let the judgment be· reversed.